Phillip E. Benson, CA Bar #97420
WARREN ■ BENSON Law Group
620 Newport Center Dr., Ste 1100
Newport Beach, CA 92660
Tel: 949-721-6636; Fax: 952-955-5177
philbenson@warrenbensonlaw.com

Attorneys for *Qui Tam* Plaintiff
Brian S. Ranger

ORIGINAL

FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SACV07-0014  JVS  MLGx

| | |
|---|---|
| UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA ex rel. BRIAN S. RANGER, <br><br> Plaintiffs, <br><br> vs. <br><br> PRN AMBULANCE, INC.; DAVITA, INC.; ALHAMBRA HOSPITAL MEDICAL CENTER, L.P.; KIDNEY CENTER OF LOS ANGELES, LLC; RENAL ADVANTAGE, INC., <br><br> Defendants. | CASE NO. <br><br> COMPLAINT FOR VIOLATION OF THE FEDERAL FALSE CLAIMS ACT AND THE CALIFORNIA FALSE CLAIMS ACT <br><br> JURY DEMAND <br><br> [FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)] |

-1-                                           COMPLAINT

*Qui Tam* Plaintiff Brian S. Ranger, by and through his attorneys, brings this complaint on behalf of the United States and the State of California and on his own behalf as follows:

## I.
## JURISDICTION AND VENUE

1. This is an action for civil damages and penalties under the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the California False Claims Act, California Government Code § 12650 *et seq.* This court has subject matter jurisdiction pursuant to 31 U.S.C. § 3730(a), 28 U.S.C. § 1331 and 28 U.S.C. § 1367. The court has personal jurisdiction over the defendants because the defendants transact business in this district and the acts complained of occurred in this district. Venue is proper in this district under 31 U.S.C. § 3732(a) because the defendants can be found in this district and the acts complained of occurred in this district.

## II.
## PARTIES

2. *Qui Tam* Plaintiff Brian S. Ranger ("Ranger") resides in this district and is employed as a general manager by defendant PRN Ambulance, Inc.

3. Defendant PRN Ambulance, Inc. ("PRN"), is a California Corporation, ID # C2248139, located at 345 S. Woods Ave, Los Angeles, California 90022. PRN provides non-emergency ambulance and wheelchair and litter van services in Los Angeles County, including the Cities of Los Angeles and Long Beach. PRN has been in business since October 2000.

4. Defendant Davita, Inc. (("Davita") is a Delaware Corporation headquartered at 601 Hawaii Street, El Segundo, California 90245. Davita operates a nationwide network of kidney dialysis centers, including the Hollywood Dialysis Center located at 5108 Hollywood Boulevard, Los Angeles, California, 90027, and Doctors Dialysis of East LA, located at 950 South Eastern Avenue, Los Angeles, California 90022.

5. Defendant Alhambra Hospital Medical Center, L.P., ("Alhambra Hospital") is a

COMPLAINT

California limited partnership located at 100 South Raymond Ave, Alhambra, California 91801. Alhambra Hospital operates a hemo-dialysis center (Alhambra Community Dialysis). Dr. Steven Shan-Jen Ho ("Dr. Ho") is a nephrologist who is an Alhambra Hospital staff member.

6. Defendant Kidney Center of Los Angeles, LLC, ("Kidney Center of LA") is a California Limited Liability Company with its principal place of business at 1125 West 6th Street, Suite 101, Los Angeles, California 90017. The Kidney Center of LA is jointly owned and operated by nephrologists, Dr. Philip Hom and Dr. Hira Jindal, and Innovative Dialysis Systems, Inc. ("IDS"), a California corporation headquartered in Long Beach, California. The Kidney Center of LA is operated as a dialysis facility.

7. Defendant Renal Advantage, Inc., ("Renal Advantage") is a Delaware Corporation headquartered at 115 East Park Dr., Suite 300, Brentwood, Tennessee 37027. Renal Advantage is a nationwide provider of dialysis services and operates several dialysis facilities in California, including a dialysis facility located at 5714 East Olympic Boulevard, Los Angeles, California 90022.

## III.

## FIRST CLAIM FOR VIOLATION OF THE FEDERAL
## FALSE CLAIMS ACT AGAINST DEFENDANT PRN

8. PRN is an approved Medicare and Medi-Cal (California Medicaid) provider. As an approved provider, PRN is contractually and statutorily obligated to follow Medicare and Medi-Cal reimbursement rules, limitations and exclusions when billing for transportation provided by ambulance or wheelchair or litter van.

9. Title XVIII of the Social Security Act divides costs related to medical care which are reimbursable by Medicare into Parts A, B and D. Ambulance services are defined as "medical and other health services" which are covered under Part B. Ambulance services, however, are reimbursable only "where the use of other methods of transportation is contraindicated by the beneficiary's condition. In any case in which some means of transportation other than an

COMPLAINT

3

ambulance could be utilized without endangering the patient's health, whether or not such transportation is actually available, no payment may be made for the ambulance transport." Thus, Medicare only pays for ambulance transportation that is medically necessary based on the patient's condition at the time of transport and, unlike Medi-Cal, it does not pay for other forms of medical transportation, such as wheelchair or litter vans that do not meet the staff, vehicle and equipment requirements set forth in Medicare guidelines for ALS ("Advanced Life Support") or BLS ("Basic Life Support") ambulance services.

10. Medicare coverage includes payment for non-emergency scheduled and unscheduled ambulance services when the patient's condition is such that any other form of transportation is contraindicated <u>and</u>, subject to the exception at 42 C.F.R. § 410.40(d)(3)(ii), the ambulance supplier obtains a written order certifying medical necessity from the beneficiary's attending physician or, under limited circumstances, another authorized individual, i.e. physician assistant, nurse practitioner, clinical nurse specialist, registered nurse or discharge planner who is employed either by the beneficiary's attending physician or the facility where the beneficiary is being treated <u>and</u> who has personal knowledge of the beneficiary's condition at the time the transport is ordered or the service was furnished. The presence of a signed physician certification does not necessarily demonstrate that the transport was medically necessary. The ambulance supplier must meet all coverage criteria in order for payment to be made and only the certifying physician or other authorized individual who has personal or professional knowledge of the patient's condition may complete the certificate of medical necessity. A form certificate of medical necessity ("Physician's Certification Statement" or "PCS") which is merely signed by a physician or other authorized individual wherein the remaining portions of the certificate which describe the patient's condition is prepared by another person in such a way as to falsely substantiate medical necessity is a misrepresentation which constitutes a violation of the False Claims Act if the purpose is to obtain payment for an ambulance transport which would not otherwise be reimbursable.

11. A substantial portion of PRN's business includes the transport of Medicare and

COMPLAINT

4

Medi-Cal beneficiaries to and from outpatient dialysis facilities for maintenance dialysis treatment. Most transports of dialysis patients to and from outpatient dialysis facilities for maintenance dialysis treatment are non-emergency transports which do not ordinarily require ambulance services. Since approximately October 2000 to the present, however, PRN has routinely transported non-emergency dialysis patients who are Medicare beneficiaries to and from outpatient dialysis facilities by ambulance and billed these ambulance transports to Medicare as if they were medically necessary even though other means of transportation could have been used without endangering the patient's health. In order to falsely document medical necessity for the purpose of billing Medicare, PRN billing personnel with no personal or professional knowledge of the patient's condition would either prepare the PCS for signature by a physician or other authorized individual and include false information that misrepresented medical necessity information on the PCS form or PRN billing personnel would obtain a pre-signed, oftentimes undated, PCS form from the outpatient dialysis facility and then complete the form with false information about the patient's condition that would misrepresent medical necessity at the time of transport. The following are specific examples:

    a) Between February 15, 2005 and November 22, 2006, Medicare patient #333463239A was transported by ambulance to and from the Renal Advantage dialysis facility at 5714 East Olympic Boulevard, Los Angeles, for a total of 228 trips that were billed to Medicare for a total amount of $86,654.00. Even though several of PRN's internal trip sheets prepared by the transporting EMT show that the patient's condition was stable, that the patient was ambulatory and that the trips were conducted without incident, PRN billing personnel pre-prepared the corresponding PCS forms for signature by the dialysis facility physician which falsely stated that the patient was unable to ambulate and could not stand or walk.

    b) Patient SSN #xxx-xx-9955 was scheduled for ambulance services between November 7, 2006 and January 6, 2007 from the Briar Oaks nursing facility to Davita's Hollywood Dialysis Center and back. A blank PCS form was signed, un-dated, by a physician at the dialysis facility on or about November 15, 2006. The medical necessity information on the

COMPLAINT

form was left blank for subsequent entry by PRN billing personnel.

c) Patient SSN #xxx-xx-8372 was scheduled for ambulance services between November 10, 2006 and January 9, 2007 from the Skyline Healthcare Center to Davita's Hollywood Dialysis Center and back. A blank PCS form was signed, undated, by a physician at the dialysis facility on or about November 15, 2006. The medical necessity information on the form was left blank for subsequent entry by PRN billing personnel.

d) On or about November 18, 2006, Dr. Ho at Alhambra Hospital signed a blank PCS form for patient SSN #xxx-xx-5546 for ambulance transportation from the Westlake Convalescent Home to Alhambra Community Dialysis and back. The medical necessity information on the form was left blank for subsequent entry by PRN billing personnel.

e) On or about November 22, 2006, a dialysis facility physician signed a blank PCS form for patient SSN #xxx-xx-6382 for ambulance transportation from the patient's residence to Davita's Doctors Dialysis of East LA and back. The medical necessity information on the form was left blank for subsequent entry by PRN billing personnel.

f) Patient SSN #xxx-xx-6006 was scheduled for ambulance services between November 21, 2006 and January 20, 2007 from the Briar Crest Convalescent facility to the Kidney Center of LA and back. On or about December 1, 2006, a blank PCS form was signed, undated, by a physician at the dialysis center. The medical necessity information on the form was left blank for subsequent entry by PRN billing personnel.

g) On or about December 1, 2006, a physician at the Kidney Center of LA signed a blank, undated, PCS form for ambulance services to be provided by PRN for patient SSN#xxx-xx-3807 from the patient's residence to the Kidney Center of LA and back. The dates of service and medical necessity information on the form were left blank for subsequent entry by PRN billing personnel.

12. From approximately October 2000 to the present, PRN has implemented a policy to bill all ambulance transports of Medicare covered patients to Medicare even in cases in which some other means of transportation could have been utilized without endangering the patient's

COMPLAINT

6

health. In order to falsely bill Medicare for such non-reimbursable ambulance transports, PRN billing personnel would either prepare PCS forms containing false medical necessity information for a physician's signature or they would obtain blank signed PCS forms from physicians and enter false medical necessity information on the form, even though the actual condition of the patients did not justify payment from Medicare for ambulance services. PRN billing personnel would then submit false claims to Medicare by using either HCFA form 1500 or an electronic billing form and, on each of these forms, PRN would knowingly insert codes which misrepresented that the ambulance transport was medically necessary and reimbursable under Medicare rules.

13. By virtue of the acts described above, the defendant has knowingly presented or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1) and has knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved in violation of 31 U.S.C. § 3729(a)(2).

## IV.

### SECOND CLAIM FOR VIOLATION OF THE CALIFORNIA AND FEDERAL FALSE CLAIMS ACTS AGAINST PRN

14. Plaintiffs re-allege paragraphs 1-13 as if fully set forth herein.

15. Medi-Cal (California Medicaid) is a program of medical assistance for certain medically needy and low income families who meet the categorical requirements of federal and state laws. The Medi-Cal program is funded from a combination of federal and state monies. Similar to Medicare's reimbursement rules for ambulance transports, Medi-Cal also requires "medical necessity." For non-emergency transportation of dialysis patients, Medi-Cal covers ambulance <u>and other medical transportation</u> (i.e. wheelchair and litter vans) only when ordinary public or private conveyance is medically contraindicated <u>and</u> transportation is required for obtaining needed medical care. A Treatment Authorization Request ("TAR") is required for non-

COMPLAINT

7

1  emergency transportation. The TAR must be accompanied by an order sheet signed by a
2  physician for the medical transportation to be covered by Medi-Cal. The order sheet must include
3  a statement from the physician describing the medical or physical condition of the patient that
4  makes public or private transportation inadvisable.
5       16.   Since approximately October 2000 to the present, PRN has provided medical
6  transportation to non-emergency dialysis patients who are covered by Medi-Cal to and from
7  outpatient dialysis facilities and routinely and knowingly billed Medi-Cal as if these transports
8  were medically necessary even though public or private transportation could have been used
9  without endangering the patient's health. In order to falsely document medical necessity, PRN
10 billing personnel with no personal or professional knowledge of the patient's condition would
11 obtain pre-signed, oftentimes undated, order sheets from the outpatient dialysis facility and then
12 complete the order sheet with false information about the patient's condition that would
13 misrepresent medical necessity at the time of transport. For example, on or about December 1,
14 2006, the Kidney Center of LA provided an undated order sheet, pre-signed by a physician, for
15 Medi-Cal patient I.D.#90368541A25031 for medical transportation services "3X per week for
16 one year" beginning January 1, 2007. The portion of the order sheet describing the medical or
17 physical condition of the patient that made public or private transportation inadvisable was left
18 blank for subsequent insertion by PRN billing personnel.
19       17.   By virtue of the acts described above, the defendant has knowingly presented or
20 caused to be presented false claims for payment or approval in violation of 31 U.S.C. §
21 3729(a)(1) and California Government Code § 12651(a)(1) and has knowingly made, used, or
22 caused to be made or used, false records or statements to get false or fraudulent claims paid or
23 approved in violation of 31 U.S.C. § 3729(a)(2) and California Government Code § 12651(a)(2).

## V.

## THIRD CLAIM FOR VIOLATION OF THE CALIFORNIA AND FEDERAL FALSE CLAIMS ACTS AGAINST DAVITA,

COMPLAINT

## ALHAMBRA HOSPITAL, KIDNEY CENTER OF LA
## AND RENAL ADVANTAGE

18. Plaintiffs re-allege paragraphs 1-17 as if fully set forth herein.

19. Upon information and belief, Defendants Davita, Alhambra Hospital, Kidney Center of LA and Renal Advantage ("dialysis providers") have instituted unwritten corporate policies designed to ensure that Medicare, Medicaid and Medi-Cal reimburses PRN and other ambulance and medical transportation providers for Medicare, Medicaid and Medi-Cal covered patients receiving ambulance and other medical transportation to and from the dialysis providers' facilities regardless of the absence of medical necessity. To facilitate such false billing, physicians and other personnel at the dialysis providers' facilities who are authorized by federal and state regulations to certify medical necessity have routinely signed, oftentimes undated, medical necessity certifications, PCS forms and order sheets, knowing that ambulance and medical transportation service billing personnel with no personal or professional knowledge of the patient's condition would insert or had inserted false medical necessity information on the certifications, PCS forms and order sheets in order to falsely bill Medicare or Medicaid.

20. Between approximately January 1997 and the present, by virtue of the acts described above, the dialysis centers have knowingly caused to be made or used false records or statements to get false or fraudulent claims paid or approved in violation of 31 U.S.C. § 3729(a)(2) and California Government Code § 12651(a)(2).

## VI.
## FOURTH CLAIM FOR VIOLATION OF THE FEDERAL
## FALSE CLAIMS ACT AGAINST PRN

21. Plaintiffs re-allege paragraphs 1-13 as if fully set forth herein.

22. Medicare covers medically necessary non-emergency, scheduled, repetitive ambulance services provided to Medicare beneficiaries if the ambulance provider, before furnishing the service to the beneficiary, obtains a PCS from the beneficiary's attending

COMPLAINT

physician, dated no earlier than 60 days before the ambulance service is provided, certifying that Medicare's medical necessity requirements have been met.

23. Since approximately October 2000 to the present, based on information and belief, PRN has routinely billed Medicare for non-emergency, scheduled, repetitive ambulance services provided to Medicare beneficiaries without obtaining signed PCS forms which were dated earlier than 60 days before the date the ambulance service was provided. Without having obtained signed PCS forms dated earlier than 60 days before the ambulance services were furnished,, PRN's reimbursement claims submitted to Medicare were false because the billing codes used by PRN misrepresented to Medicare that timely signed and dated PCS forms had been obtained by PRN. PRN knew they were false because no timely signed and dated PCS forms were on file at PRN. For example, PRN obtained a signed PCS for Medicare patient SSN #XXX-XX-1175 dated January 26, 2006. The PCS expired on March 27, 2006. With no current PCS on file, PRN continued to bill Medicare for 44 non-emergency, scheduled, repetitive ambulance runs between March 28, 2006 and June 3, 2006 at the rate of $607.75 per run.

24. By virtue of the acts described above, PRN has knowingly presented or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1).

## VII.
## FIFTH CLAIM FOR VIOLATION OF THE FEDERAL AND CALIFORNIA FALSE CLAIMS ACTS AGAINST PRN

25. Plaintiffs re-allege paragraphs 1-24 as if fully set forth herein.

26. Medicare and Medi-Cal pay additional sums of money at set rates to ambulance providers as reimbursement for mileage, per mile, for covered ambulance and medical transportation services. The mileage is required to be accurately stated as a unit charge on the claim form. Upon information and belief, between October 2000 and the present, PRN has routinely entered false excess mileage on Medicare and Medi-Cal claim forms. Because the run

COMPLAINT

10

sheets prepared by PRN's EMTs reflect actual mileage, such entry of false excess mileage on the billing forms was done knowingly. For example, between May 29, 2006 and October 25, 2006, PRN charged Medicare for 2 miles for each leg of non-emergency, repetitive ambulance services provided 3 times a week from the patient's residence to a dialysis center and back for patient I.D. # 97109292C instead of 1 mile, the actual distance between the patient's residence and the dialysis center.

27.  By virtue of the acts described above, PRN has knowingly presented or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1) and California Government Code § 12651(a)(1).

## VIII.
## SIXTH CLAIM FOR VIOLATION OF THE CALIFORNIA
## FALSE CLAIMS ACT AGAINST PRN

28.  Plaintiffs re-allege paragraphs 1-20 as if fully set forth herein.

29.  Medi-Cal pays for single run wheelchair and litter van transportation of multiple Medi-Cal patients but reduces the per patient charge for each additional patient up to four. The number of patients transported in a single run is reflected by a code entered on the billing form. Code XO200 indicates that only one patient was transported, XO202 indicates that 2 patients were transported, XO203 indicates that 3 patients were transported and XO204 indicates that four patients were transported. Upon information and belief, since approximately October 2000, PRN has routinely misrepresented the number of patients transported by wheelchair and litter van in order to falsely claim more reimbursement from Medi-Cal than it was entitled. For example, on November 1, 2006, PRN van # 16 transported three patients at once to Monterey Park Dialysis. The patients were picked up 15 minutes apart between 3:00 p.m. and 3:30 p.m. and delivered together to the dialysis facility. Yet, Medi-Cal was charged as if each patient had been transported individually.

30.  By virtue of the acts described above, PRN has knowingly presented or caused to

COMPLAINT

11

be presented false or fraudulent claims for payment in violation of California Government Code § 12651(a)(1).

### PRAYER

**WHEREFORE**, plaintiffs pray that judgment be entered as follows:

A. For each and every claim, treble damages and civil penalties up to the maximum permitted by law, for the maximum *qui tam* percentage share allowed pursuant to 31 U.S.C. § 3730(d) and California Government Code § 12652(g) and for attorney's fees, costs and reasonable expenses;

B. For any and all other relief to which the plaintiffs may be entitled.

### JURY DEMAND

Plaintiffs request a trial by jury.

Dated: January 3, 2007

Respectfully submitted,

By: _____
Phillip E. Benson

WARREN■BENSON Law Group
Attorneys for *Qui Tam* Plaintiff
Brian S. Ranger

COMPLAINT

12

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
United States and the State of California ex rel. Brian S. Ranger

**DEFENDANTS**
PRN Ambulance, Inc.; Davita, Inc.; Alhambra Hospital Medical Center, LP; Kidney Center of Los Angeles, LLC; Renal Advantage, Inc.

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): Los Angeles

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Phillip E. Benson, Warren-Benson Law Group, 620 Newport Center Dr., Ste 100, Newport Beach, CA 92660; Tel: 949-721-6636; Fax: 952-955-5177

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No ☐ MONEY DEMANDED IN COMPLAINT: $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Qui tam action under False Claims Act, 31 U.S.C. sec. 3730(b)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition FORFEITURE / PENALTY | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 610 Agriculture | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | SOCIAL SECURITY |
| ☒ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number:

CV-71 (07/05)                      CIVIL COVER SHEET                      Page 1 of 2

SACV07-0014   JVS   MLGx

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☑ Check here if the U.S. government, its agencies or employees is a named plaintiff.
Brian S. Ranger - Orange

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
PRN Ambulance - Los Angeles; Davita - Los Angeles; Alhambra Hospital Medical Center - Los Angeles; Kidney Center of Los Angeles - Los Angeles; Renal Advantage - Tennessee

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.
Los Angeles

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _/s/_ Date 1/3/07

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

**SACV07- 14 JVS (MLGx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [X] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.